UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMARA H., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C20-1731-SKV <br><br> ORDER AFFIRMING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff was born in 1967, has an associate's degree and additional job training, and has worked as a tractor supply parts helper, caregiver, equipment rental clerk, permit technician, manager of a go-kart facility, insurance assistant, and flagger. AR 218, 235-47. Plaintiff was last gainfully employed in 2017. AR 48.

1 | In July 2018, Plaintiff applied for benefits, alleging disability as of April 19, 2011.[1] AR

190-91. Plaintiff's application was denied initially and on reconsideration, and Plaintiff

requested a hearing. AR 136-37, 138-45. After the ALJ conducted a hearing in April 2020 (AR

33-103), the ALJ issued a decision finding Plaintiff not disabled. AR 15-27.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity between her amended alleged onset date and her date last insured ("DLI") of December 31, 2017.

**Step two**: Through the DLI, Plaintiff had the following severe impairments: obesity, degenerative disc disease of the spine, left shoulder impairment, and complex regional pain syndrome related to the left arm.

**Step three**: Through the DLI, these impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity ("RFC")**: Through the DLI, Plaintiff could perform light work with additional limitations: she could lift/carry 20 pounds occasionally and 10 pounds frequently. She could stand, walk, or sit for about six hours each in an eight-hour workday with normal breaks. Her push/pull capabilities (including operation of hand/foot controls) were limited in the non-dominant upper arm to occasional. She could frequently climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. She could frequently balance, stoop, kneel, and crouch, and occasionally crawl. She could occasionally reach in any direction (including overhead, front, and/or laterally) with the left arm. She had no restrictions on the right arm, and handling, fingering, and feeling were unlimited. She needed to avoid concentrated exposure to vibrations, hazardous machinery, or working at unprotected heights.

**Step four**: Through the DLI, Plaintiff could perform her past work as a permit technician.

AR 15-27.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

Commissioner's final decision. AR 1-6. Plaintiff appealed the final decision of the

---

[1] Plaintiff amended her alleged onset date to August 1, 2016. AR 213.
[2] 20 C.F.R. § 404.1520.
[3] 20 C.F.R. Part 404, Subpart P, App. 1.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 2

Commissioner to this Court. Dkt. 1.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## DISCUSSION

Plaintiff argues the ALJ erred in discounting her subjective allegations and lay statements, and in assessing certain medical opinions. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

### A. The ALJ Did Not Harmfully Err in Discounting Plaintiff's Subjective Allegations or Lay Testimony

The ALJ discounted Plaintiff's testimony because (1) her allegations were not consistent with the medical evidence, which included evidence of exaggeration as well as improvement with treatment; and (2) her activities, including driving and working part-time, were inconsistent with her allegations. AR 21-23. Absent evidence of malingering, an ALJ must provide clear and convincing reasons to discount a claimant's allegations. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff argues that the ALJ failed to provide legally sufficient reasons to discount her testimony. As to the ALJ's reliance on the medical record, Plaintiff acknowledges that examining physicians observed her exaggerated pain behavior (see, *e.g.*, AR 518, 542, 557), but notes that her treating physicians opined that her impairments accounted for her symptoms. Dkt. 12 at 14-15. That the exaggerated pain behavior was observed by examining as opposed to treating physicians is irrelevant for purposes of evaluating Plaintiff's symptoms: the exaggeration itself constitutes a clear and convincing reason to discount Plaintiff's allegations. *See, e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (affirming an ALJ's discounting of a claimant's testimony based on, among other things, a tendency to exaggerate); *Erin H. v. Saul*, 2021 WL 1182366, at *6 (E.D. Wash. Mar. 29, 2021) (affirming an ALJ's reliance on plaintiff's exaggerated pain behavior during a consultative examination as a basis for discounting her allegations).

The ALJ also pointed to evidence of improvement with physical therapy, chiropractic, and massage, and noted that Plaintiff did not return for a Botox injection between March 2016 and September 2017, although she reported she received only four months of relief after the March 2016 injection. AR 22 (citing AR 590, 605, 782, 785, 789, 800-01). Improvement with

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 4

conservative treatment, to the point where Plaintiff did not seek additional injections during a period of longer than a year, constitutes an additional valid reason to discount Plaintiff's allegations of disabling limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain."). Although Plaintiff emphasizes that she received only temporary relief with treatment (Dkt. 12 at 15), the ALJ did not claim otherwise: the ALJ acknowledged that Plaintiff reported four months of complete relief after a Botox injection in March 2016, and yet did not return for another injection until September 2017. AR 22. This evidence can be reasonably construed to mean that the March 2016 injection provided enough relief until Plaintiff sought another injection in September 2017, as the ALJ found.

      The ALJ also found Plaintiff's allegations to be inconsistent with her activities, namely driving and working part-time. The ALJ contrasted the physical and mental requirements of driving with the physical and mental limitations Plaintiff described, and also noted that Plaintiff was able to maintain a job requiring significant standing and lifting from April to September 2017. AR 22-23. Plaintiff suggests that these activities were not inconsistent with her allegations because she alleged some difficulty with these activities. Dkt. 12 at 9-10. The ALJ did acknowledge some of those difficulties (AR 17-18, 22-23), but also made inconsistent findings as to whether Plaintiff's work during the adjudicated period constituted substantial gainful activity. *Compare* AR 17-18 *with* AR 23. Furthermore, although the ALJ also referenced Plaintiff's ability to hold a baby after her DLI, this activity is not relevant to

Plaintiff's functioning during the adjudicated period, as the ALJ himself seemed to acknowledge. AR 23.

Even if the ALJ erred in relying on Plaintiff's activities as a reason to discount her allegations, or in emphasizing that Plaintiff's providers did not observe her to be in acute distress (AR 22), the ALJ provided other reasons as described above that remain valid. Thus, any error in the ALJ's findings regarding activities or observations of "no apparent/acute distress" is harmless. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Because the ALJ provided clear and convincing reasons to discount Plaintiff's allegations, any error in the ALJ's discounting of the lay statements (AR 282-306) is harmless because the lay witnesses' statements are similar to Plaintiff's properly discounted testimony. *See Molina*, 674 F.3d at 1117-22; *Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")).

  **B.**  **The ALJ Did Not Harmfully Err in Assessing the Medical Opinion Evidence**

Plaintiff assigns error to the ALJ's assessment of opinions written by treating physician Harold Clark, M.D., and examining physician Michael Santoro, M.D. The Court will address each disputed opinion in turn.

  *1.*  *Legal Standards*

In assessing Plaintiff's 2018 application for benefits, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are

supported by and consistent with the record.  20 C.F.R. §§ 404.1520c(a)-(c) 416.920c(a)-(c).

The Commissioner argues that the regulations promulgated in 2017 changed the legal standards previously articulated by the U.S. Court of Appeals for the Ninth Circuit.  *See* Dkt. 14 at 10-12.  Under current Ninth Circuit precedent, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor, and "specific and legitimate" reasons to reject a contradicted opinion from such doctor.  *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).  The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standards for the review of medical opinions.  It is not, in any event, clear that the Court's consideration of the adequacy of an ALJ's reasoning under the new regulations would differ in any significant respect.  The new regulations still require ALJs to explain their reasoning with specific reference to how they considered the supportability and consistency factors, 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b), and that reasoning must remain legitimate.  *See Thomas S. v. Comm'r of Social Sec.*, No. C20-5083 RAJ, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020).  The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).  With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

    2.    Dr. Clark

Dr. Clark has treated Plaintiff since 2010 and opined in July 2018 that since September 2017 Plaintiff was unable to work and unable to use her left arm, walk, stand, turn her neck, lift, or perform repetitive movement.  AR 817.  Dr. Clark completed another form opinion in August 2019, indicating *inter alia* that Plaintiff could not reach, handle, finger, or perform repetitive tasks at all on the left, and could only sit four hours in an eight-hour workday.  AR 819-22.

The ALJ found Dr. Clark's opinions to be unpersuasive because they were unexplained and not supported by his treatment notes, and inconsistent with each other without explanation. AR 24. The ALJ also found that Dr. Clark's opinions were inconsistent with Plaintiff's ability to drive during the adjudicated period, as well as the physical examinations performed during the period. *Id*. The ALJ noted that in a video connected with Plaintiff's worker's compensation claim, she was seen to be engaging in manipulative activities inconsistent with Dr. Clark's opinions. *Id*.

Plaintiff argues that the ALJ erred in finding Dr. Clark's opinions unpersuasive for these reasons. The Court agrees that the video-related reasoning is erroneous, because the video at issue is not in the record and there is no evidence that the ALJ viewed the video (the Commissioner's briefing notwithstanding (Dkt. 14 at 8-9)), and therefore the ALJ had no basis to find any part of the video to be inconsistent with the limitations described by Dr. Clark.

The ALJ provided other valid reasoning, however. The ALJ reasonably found that Dr. Clark's treatment notes do not corroborate the significant limitations he indicated in his opinions. *See, e.g.*, AR 774 (describing mild pain and many normal findings), 777 (same), 783 (describing improvement with treatment), 786 (same), 788-89 (same), 792 (normal findings), 796-97 (describing Plaintiff's ability to work with accommodations for her left arm). Dr. Clark's treatment notes did reference Plaintiff's pain complaints and indicated that Plaintiff did not use her left arm (*e.g.*, AR 765-66, 769), but, as noted by the ALJ, these notes were contradicted by evidence showing that Plaintiff did use her left arm to some degree for driving and working. AR 24.

The ALJ also emphasized that Dr. Clark's opinions were inconsistent with physical examinations performed during the adjudicated period. AR 24. The ALJ credited the opinions

of examiners (AR 24 (discussing AR 520-22, 619)) that are inconsistent with Dr. Clark's opinions and more persuasive than Dr. Clark's opinions, and Plaintiff has not assigned error to the ALJ's crediting of those opinions. Plaintiff notes that Dr. Clark's opinions were consistent with other evidence in the record (Dkt. 12 at 8), but this does not show that the ALJ erred in finding Dr. Clark's opinions to be inconsistent with persuasive opinions or in discounting Dr. Clark's opinions on that basis. *See Tommasetti*, 533 F.3d at 1041 (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

To the extent that Plaintiff argues in passing (Dkt. 12 at 10-11) that the ALJ's assessment of Dr. Clark's opinions led the ALJ to exclude certain conditions at step two, she has not addressed the ALJ's step-two findings or showed that the exclusion of certain conditions led to the ALJ's failure to consider limitations caused by those conditions. The ALJ explicitly indicated that he considered all of Plaintiff's medically determinable impairments when assessing her RFC (AR 18), and Plaintiff has not shown that this finding is inaccurate. Thus, the Court finds that Plaintiff has not met her burden to show any harmful error at step two in connection with Dr. Clark's opinions.

3. *Dr. Santoro*

Dr. Santoro examined Plaintiff in January 2017, reviewed approximately 300 pages of her medical records, and wrote a narrative report for purposes of evaluating her impairment rating for her worker's compensation case. AR 615-20. Dr. Santoro concluded that, *inter alia*, Plaintiff was capable of working in a "sedentary to light physical capacity with limited use of the left upper extremity." AR 619. Dr. Santoro rated Plaintiff's total impairment of the left upper extremity at 83%. *Id*. The ALJ found Dr. Santoro's opinion to be persuasive because it was

supported by his physical examinations and consistent with other opinions and evidence in the record, including Plaintiff's ability to drive.  AR 24.

Plaintiff argues that although the ALJ purported to find Dr. Santoro's opinion persuasive, the ALJ's RFC assessment is not consistent with Dr. Santoro's opinion.  Dkt. 12 at 12.  Plaintiff has not pointed to any particular inconsistency between the ALJ's RFC assessment and Dr. Santoro's opinion, however.  Dr. Santoro did not opine that Plaintiff could not use her left arm 83% of the time, nor did he quantify Plaintiff's arm limitation using any other vocationally relevant terms.  The ALJ found Plaintiff to be limited in her ability to use her left arm, specifically in her ability to lift/carry, push/pull, and reach.  *See* AR 20.  Plaintiff has not explained how those limitations are necessarily inconsistent with an 83% impairment rating or any other part of Dr. Santoro's opinion, and thus has not met her burden to show that the ALJ erred in failing to fully account for Dr. Santoro's opinion.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 9th day of July, 2021.

S. KATE VAUGHAN
United States Magistrate Judge